Our next case for argument 23-1777, Trudell Medical v. D R Burton Healthcare. How do I say your name, counsel? Laura Liddickson. Ms. Liddickson, please proceed. Roll on warning. May it please the court, I'm going to start with a very brief summary of the case for our law student audience. This case began in 2018 when my client, Trudell Medical, sued a competitor for infringing its patent for a respiratory medical device. That case was reassigned to a new judge about three years in and went to trial in November of 2022, where the jury returned a verdict of non-infringement and that the patent was not invalid. The reason we're here today is because what happened in that trial presents a very clear example of a prejudicial procedural error. Specifically, there's no real dispute that district court permitted D R Burton's expert, Dr. John Collins, to testify on the issue of non-infringement despite the fact that he had not submitted a timely expert report in the matter. That error was compounded by the subject matter of his testimony, which included spending considerable time comparing the accused products not to the patent claims, but to the figures in the patents, and also presenting non-infringement arguments that flatly contradicted the district court's claim constructions. Trudell Medical, but for that that error, Trudell Medical would have prevailed in proving infringement of D R Burton's devices because no reasonable jury, not even one drawing all reasonable inferences in D R Burton's favor, could have come to any conclusion. Here's the problem. I'm going to start with your last argument here, which is you want us to say that the district court abuses discretion in this trial by admitting expert testimony because that expert testimony violated, among other things, Rule 26. We'll get to that in a second. But the last point you made is, and therefore we should find in your favor, the problem is you had the burden of proof. And even if they don't put on a defense, you could still lose, right? Even if they don't have an expert, even if they don't put on a defense, the jury could find you didn't meet your burden, that your expert wasn't persuasive, that they didn't believe him. So why is it that instead of a new trial, you think that we ought to decide that in the absence of this prejudicial error, the jury would have 100% found for you, there's no question about it, and they couldn't have done otherwise? I agree with you, Judge Moore, Chief Judge Moore, excuse me, that that is possible. But here, the infringement case was very, very straightforward. Dr. Durgan presented testimony, which begins at Appendix 2305, and it was accompanied by slides, which you'll find in Volume 3 at Appendix 2857, that show element by element where each element of the asserted claims is found in the accused products. It's not complicated testimony. It's pretty straightforward. And in denying the Trudell's motion for J-Mal, what Judge Boyle said was that it was unclear. But what's striking is that this is a very typical infringement presentation. There was a cross-examination though, right? There was a cross-examination of your expert. I think there was some focus on the shape, whether it was oval or whether it was rectangular. There were some elements that were discussed on cross, right? Most of the cross-examination of Dr. Durgan focused on the issue of invalidity, not on infringement. The limitation that you're referring to, Judge Stoll, is the limitation that requires... It's the oblong, cross-sectional shape limitation. Yes. And the district court's claim construction was that it required generally rectangular or generally elliptical. And D.R. Burton's argument was that this rectangular shape with the rounded corners did not meet that. And the argument was that it wasn't a rectangle or an ellipse, but it was generally elliptical and generally rectangular. No reasonable jury could have found that that did not meet the claim construction. The problem was that Dr. Collins presented... What standard of review is applied here? Is it Federal Circuit law on what the standard is for JMO or is it Fourth Circuit law? This is a procedural question, so it would be under Fourth Circuit law. And what does the Fourth Circuit say in a circumstance like this, where you carry the burden of proof, what that standard of review would be? It has to be that no reasonable jury could have reached a conclusion other than that there was infringement when drawing all reasonable inferences in D.R. Burton's favor. And here, no reasonable jury could have, given how straightforward this evidence is. What if I have a Fourth Circuit case, for example, something called Thornhill, but in the Fourth Circuit, the question is whether the evidence is so overwhelming that we cannot uphold the jury's rejection of Trudell's infringement claim? It is overwhelming. There was very little evidence on the other side, from the cross or otherwise, even with Dr. Collins' testimony. And the only testimony from Dr. Collins conflicted with the court's claim constructions or applied the incorrect legal standard. The other thing about Judge Boyle's denial of the JMO motion is he says that Dr. Durbin was unclear, but he doesn't identify anything about Dr. Durbin's testimony, the manner of him giving it, or any particular limitation for which the presentation was unclear. Why don't you move on to the Rule 26 argument? Why should Dr. Collins not have been allowed to offer testimony? Why the court abused discretion? He never submitted an expert report, period, in this case on the issue of non-infringement. But even if you assume that these declarations that I'm sure D.R. Burton's counsel is going to point to in a few minutes were expert reports, none of them covered the issue of non-infringement. You're talking about the first two declarations? The timely ones, correct. So what about the final declaration that was submitted as an attachment to the summary judgment motion? The summary judgment declaration suffers from multiple problems. It was submitted three weeks after the close of all evidence. Wasn't it a day after you filed your motion in Lemonade? It was shortly thereafter, I believe, yes. And just a couple weeks before trial. There was no opportunity to depose him. It is a total of seven pages in length, about five pages of which consist of opinions on non-infringement. But they fail to explain the reasons for them. When you look at the trial transcript, there's nearly 30 pages from him on the topic of non-infringement. And what does the Fourth Circuit say about a late expert report? Supposing this is an expert report, under what circumstances do we allow it? Under what circumstances should it be excluded? So a late expert report, the civil rules can be bent if the error in following the rules is either harmless or substantially justified. And the Fourth Circuit applies a five-factor test to determine whether or not there's substantial justification. Here, the error in admitting Dr. Collins' testimony most certainly was not harmless, because it was the only evidence of non-infringement in the case. And it was very confusing to the jury, we believe. With respect to those other factors, no one has actually provided an explanation of them, either from the district court or from D.R. Burton's counsel. Didn't the district court maybe not say the magic word harmless, but offered some reasoning that, well, you had the declaration ahead of the trial. And you had an opportunity to cross-examine Dr. Collins at trial. And so therefore, in that way, you both had sufficient notice of the content of Dr. Collins' testimony before he was going to actually testify. And then, likewise, you had the opportunity to cross-examine and explore and perhaps undermine whatever his testimony was through cross-examination. So for those reasons, why wasn't that enough to be able to say, OK, it was late, it was not timely, but it was harmless? A few things here. What he said at trial was so much greater than what was at that declaration that there wasn't notice of a lot of it. The opportunity to cross-examine him was not a cure-all in this instance. Counsel, Mr. Linder, who's sitting behind me, is quite talented, but coming up with a cross-examination on entirely new technical evidence that was presented at trial over the space of a lunch break and having the same benefit of understanding and providing effective cross is just not possible with those constraints. The other thing is that the rules exist to provide notice. Our civil system is about getting all the evidence out there, understanding both sides' positions before you go to trial. And that wasn't the case, sir. What about their argument that you submitted your infringement expert report just days before the close of discovery and your damages expert report, I think, one day before the close of discovery, so they didn't have time to depose your experts? Why isn't there sort of like a balancing of all of that? It's a little bit misleading, that argument that D.R. Burton makes, because, one, the Trudell's expert reports were submitted before that deadline. And Trudell recognized that this was accelerated. This was almost like a preliminary injunction schedule that we were imposed with. So there was a conversation going. And you can see a record of that in the appendix. The earlier emails are actually in Volume 3. I think it's Appendix 3566. And then the response is Appendix 2301. But there was a dialogue between Trudell's counsel and D.R. Burton's counsel about how to effectively get the reports done in enough time to allow depositions. But D.R. Burton's position was, we're not taking these depositions, and we're not submitting any expert reports. Then, lo and behold, a couple weeks before trial, in comes this declaration that they then rely on this expert report. So you're saying they can't claim that they were harmed by your damages expert opinion proffered the day before the close of discovery because they expressly told you they weren't going to depose them? Correct. So that, what's the harm? Correct. Okay. And they also indicated that they weren't going to do an expert report on non-extinction. Correct. So this came as a surprise just a couple weeks before trial. Before we leave this, you have also an additional reason why to exclude Collins. And that's because this untimely declaration, should it be treated as an expert report, is just defective in its analysis on infringement. And its methodology is off-base. Can you just speak to that a little bit? Yes. Dr. Collins relies on claim constructions that contradicted the district court's claim constructions. One of the best- Vein? Would that be how many veins? With respect to the term a vein. And then also with rotate because the claims required a blocking segment that rotates. I'm going to start with rotate because I think that one's even clearer. But at the claim construction stage, D.R. Burton had argued that rotation requires a full revolution, not just moving back and forth, rotating this far. And the district court had rejected that and held, neither term nor intrinsic evidence support additional limitations for a full revolution. Yet at trial, and also in his declaration, Dr. Collins says the segment must go round and round and round. And that's an appendix 2528. So the jury heard that there was no infringement based on requiring a full revolution, even though that was contrary to district court's claim construction. Okay. Can you move? Because you're into your rebuttal time now. And I would really like you to address this issue. You've asked us not to send it back to the same district court judge. You think that his statements evidence what? How would you describe why you think this case should be reassigned to a different judge if it is remanded? Yes. Judge Boyle was extremely impatient with this case. And he had- Isn't it fair to say he was sort of impatient with both sides? Yes. This is not like the first argument you heard today, where they were asking for reassignment because of bias. But it impacted the party with the burden of proof more. There are probably over 15 interruptions throughout the trial of Trudell's experts. Comments about, it's a complete disaster with respect to Trudell's mills. About Trudell's background, all of the fluff and puff and advertising. This was in front of a jury criticizing Trudell's testimony. About our product, the product isn't much. It's a pretty thin piece of equipment in front of the jury again. And then to the jury after testimony from one of our witnesses. Is this making any sense to any of you? I mean, honestly. There was even more. Do you want to hear any more questions from this witness? Again, about Trudell's witness. Is anyone interested in hearing more? I didn't think so. Go ahead and ask. Keep asking. Brace yourselves. And then to our counsel. You can't do anything quickly. It was a barrage of complaints. And we submit that this is going to go back to him after six years. There's no way to cure this. It really needs to go to a different judge if we're going to have the appearance of justice. The kinds of comments that he made. Has the Fourth Circuit looked at him in particular making the same kinds of comments in another case? Yes. This is really exceptional because just a few years before this case went to trial, he had another case where he expressed extreme impatience with the case. And the Fourth Circuit reassigned it to a new judge on that basis. And we saw here what happens when it stays with him through trial. It wasn't pretty. And we asked that the court reason. So when it comes to reassignment, do you think that we should look to the Fourth Circuit law and determine under what standard they would assess reassignment? Or do you think that should be a matter of federal circuit law? It is Fourth Circuit law that governs for reassignment of the judges based on our research. And that law applies a three-factor test. One of the factors is the appearance of justice. Whether or not there would be a duplication of effort, which there wouldn't be here because he did not spend much time with this case. And whether the judge would be likely to put the issues out of his mind if he heard the case again. But again, this case is going to be six years old when it goes back to him. The same problems are going to exist. Maybe he just was having a bad day. That's not what I saw on the record. This continued and started in August and continued in the pretrial hearing and throughout the trial. I would like to reserve the remaining time. Yes. All right. Mr. Allen, please proceed. Good morning, your honors. Based on the evidence presented to the jury, not the court, decided that there was no infringement. And that evidence presented in its entirety showed that the D.R. Burton products were entirely different. But the biggest question here is, should some of that evidence have been presented to the jury, or did the district court abuse its discretion when he allowed Dr. Collins to testify? Yes, your honor. So what is your argument for why it's not an abuse of discretion? Well, your honor, it's not an abuse of discretion. Basically, the reason was, and we talked to that briefly, the district court determined that, number one, everything was running late. We had a meeting with counsel for the other side of the telephone conference, and we said, we don't have time. They had a month to take a deposition of Collins if they wanted to. They took four other depositions at that time, but chose not to take it. No, no. They weren't taking depositions after they got his expert report attached to the summary judgment. If I call that declaration an expert report, there were no depositions taking place after that discovery had closed. That's true, your honor. And he did not testify to non-infringement in his earlier declarations. So they could not have asked him questions at his deposition about an opinion he didn't offer. They questioned him about claim construction, and that was a predicate for infringement. They questioned him about the definition of the vein, which was that really a... Yes, that's claim construction, and they questioned him about validity. Sure. Because those were the expert opinions he offered on claim construction and validity. He offered no opinion on non-infringement. That's correct, your honor. Neither did Dr. Durgin, and the damages expert did not offer an opinion until the day before. But it was during discovery, right? Those opinions were offered during discovery, and you made a strategic determination not to provide expert reports, right? We made a determination that we did not have time to provide an expert report. We were very straightforward with the opposing counsel and told them that, and we told them that Dr. Collins would still be testifying. They could have taken it. The expert reports that they provided... But what did you tell them that he would be testifying about? It wasn't until after discovery that you let them know that he would be testing about infringement, right? No, your honor. I do not believe that's true. I believe we indicated that he would be testifying as to non-infringement... I don't see anything in the record that indicates that. Yes, your honor. The point being was that he was going to testify. He did testify, as did Dr. Durgin, as did Mr. Hoffman on damages. Those reports were provided one week before discovery. But we need to focus on the issue at hand that's been raised by the appellant, and that is whether it was appropriate for Dr. Collins to testify as to infringement, not on validity or any other issue, but just the infringement issue when that declaration that he submitted would be an untimely expert report. Well, your honor, it was a response to the motion for summary judgment. I think we were clear that... Right, but that doesn't give you a free ticket to allow Dr. Collins to testify when Dr. Collins did not file an expert report during the discovery window. That is correct, your honor, and our position was that neither did Dr. Durgin. But we're just right now, for purposes of this appeal, focused just on Dr. Collins and specifically his non-infringement testimony. And whether it was right or wrong, was it an abusive discretion for the district court to go ahead and allow him to testify when, number one, if we want to consider the declaration as an expert report, we want to interpret it that way, it was way out of time. Second, it appears to me that the content of that declaration is not only conclusory, but it's defective in its analysis of looking at the patent versus the accused product because Dr. Collins wasn't actually working his way through the claims and mapping the claims to the accused product. He was mapping embodiments disclosed in the patent to the accused product. And that's not the way you do an infringement analysis. Yes, your honor. Okay, so wait, let me just... Judge Chen pointed out two problems. I'm going to add a third, so you're going to have to get through all of them. In addition, if we treat this as an expert report, it didn't meet the requirements of Rule 26. It didn't articulate the reasons and bases upon which he relied. So you have a deficient expert report, both because it's untimely, because it doesn't meet the disclosure requirements of 26, and according to Judge Chen's question, because it may have some flawed methodological problems. So go ahead, tell us why that should be allowed in. Your honor, we believe that Dr. Collins' three declarations addressed what he was going to talk about at trial. Under the use of discretion standard that the court needs to follow, there was no surprise to the party. We indicated them ahead of time. They had an opportunity to review it. There was importance of the evidence at hand, although not necessary. It was certainly an important part of the case, but also Mr. Lau testified. Do you agree that there were things that he talked about with respect to infringement that were not included in the declaration that was filed late with the summary judgment response? Yes, your honor. He basically, he was asked to talk about... So you're saying the testimony that he presented at trial went beyond the scope of the alleged expert report, right? Some of it went beyond in response to trying to explain how the product worked, what the patent covered, why the patent itself, requiring one vein, would not result in a product that worked. Do you agree that he compared the accused product to the figures in the patent as part of his non-infringement methodology? He compared the patent to the figures, but the figures... No, no, it was the accused product to the figures, not the patent. He compared the accused product to the claims in the patent. He did talk about... Did he compare the accused product to the figures in the patent? Your honor, I don't recall that he did. He talked about the figures in the patent and why... Let's assume for the moment we conclude he definitely was comparing the figures of the patent to the accused product. So now we have a problem because his opinion is based on the wrong way to analyze infringement. What do we do then? Well, your honor, there is still evidence of why there was not an infringement. There was credibility issues. No, okay, so then you would accept the idea, then we would find it's an abuse of discretion to permit Dr. Collins to testify. No, your honor, I don't accept that. My position is that judging by the standards in the Fourth Circuit, you are to give the district court wide latitude. The district court understood what was going on with the timetable and the compression to get the trial. Let's shortcut this. Let's assume for the moment that the court decides it was an abuse of discretion by the district court to permit Dr. Collins to testify for a whole multitude of reasons. Where does that leave the case? How can we avoid sending this back for a new trial? Your honor, I think there was sufficient evidence for the jury to find non-infringement, even without Dr. Collins' testimony. And what is that evidence? That evidence is Mr. Lau testified. It was completely different. The evidence was that the product- But part of the problem is Mr. Lau's testimony, which I just read. It's at 2503. It's only a page in length. And all he says is that he thinks there's a day and night difference between the patented invention and the product. That's it. That's the full extent of his testimony. That's not very detailed or precise. Yes, your honor. We basically did rely on the testimony of the expert. The court allowed the expert to come in. We felt like the expert would give the best explanation of why there was no infringement, why the patent has- But if there's no expert infringement, what other testimony do you have that would be sufficient evidence on non-infringement? Well, there is none, your honor, because we made a decision at that point to rely on the testimony of the expert and did not go and bring in other individuals who could have testified. Okay, next question. Let's assume for the moment the court concludes we have no choice. We're obligated to send this back for a new trial. What position do you have on reassigning this case to a new trial judge? Your honor, the position we have on that is that it should not be reassigned to the new judge. When you look at the idea of what your characteristics are taking into account, there's no evidence that the original judge rashly would expect to have difficulty. Are you familiar with the Fourth Circuit opinion, Beachmark? Yes, your honor. Okay. Aren't there a collection of quotes that the Fourth Circuit relied on- My understanding- From this judge that closely parallel to similar statements that Judge Boyle made in this particular case? I don't- Your honor, the difference was I believe that was a summary judgment motion that he basically said he was going to take care of that and do that. In this case, he allowed it to go to trial. He let the jury decide whether or not there was a finding of infringement. So he went forward. I mean, if the statements really are very similar to the point where it's almost a made in the Beachmark case, wouldn't it look peculiar if we were to go the other way from what the Fourth Circuit did? I mean, we have to apply Fourth Circuit law here on whether to reassign to a new trial judge. There's two issues with that, your honor. First of all, like I said, he allowed it here. He allowed it to go to the jury. Second of all, this is the first of, right now, two cases. And as of four weeks ago, probably a third case that is going to be brought by Trudell against D.R. Burton. So Judge Boyle has an understanding of the technology. Judge Boyle has those cases? Well, he has the second case, your honor. It has been stayed pending the result of- Okay. It was on that third case. There's not a case been filed yet. What we received from counsel approximately four weeks ago was a notice, a cease and desist notice, and a claim chart, 68-page claim chart with two additional patents, which is one of the things that D.R. Burton was concerned about, that there is essentially this pattern that Trudell will be continuing to file new cases until they prevail on one. And this is a sense in which that's coming to fruition. And it would be helpful, and I think appropriate, particularly given the last factor, that it does go before the same court. You also suggest that you would like us to look at the issue of validity of the patent. But I see a defect. Again, procedural. You moved under Jamal at the close of the plaintiff's case in chief, but you did not renew that motion at the conclusion of the trial? Yes, Your Honor.  That's true. We stand by the substance of it, but in reviewing the case law cited by counsel on the procedural differences between Jamal at trial and Jamal post-verdict, we don't have a reasonable basis to oppose their conclusions. Okay. Thank you. Thank you for that. So do you withdraw your cross-appeal? Yes. Okay. If there's nothing further... Okay. Thank you very much, Mr. Allen. A couple points. Mr. Allen spoke a few minutes ago about how there was other testimony that might prove non-infringement, even if Dr. Collins was excluded. Mr. Lau's testimony is very conclusory and just a very high-level comparison between the overall patent figures and the device. So that does not suffice. Trudeau respectfully requests that the court grant Jamal in its favor because the evidence here under the Fourth Circuit standard, under the Federal Circuit standard, is overwhelmingly showing infringement by the accused products. Can I ask you... I want to ask you about some cross-examination testimony really quickly. There was a time when D.R. Burton's counsel introduced the accused device and then asked the outlet where the air comes from out of, that's not rectangular, right? And then Dr. Durgan replied, no, it's not rectangular. Now that was fixed on redirect, but why doesn't that create something that at a minimum would put a lock, cause the jury to not believe your expert, such that we need to vacate remand? Because the claim construction requires generally rectangular, so the question read out part of the claim construction, so it's not relevant to the actual construction of the claims about the oblong. The second point is that particular limitation is only found in Claims 9 and 18. It does not even impact Claim 1 and its dependence. And then since, unless there are any further questions, I see my time is nearly expired. I thank both counsel. The case is taken under submission.